UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x  Index No.:
NIKEKIA DESIUS and SADÉ HARRIS,

               Plaintiffs,                      **COMPLAINT**

-against-

                                           **JURY TRIAL DEMANDED**

BWW RESOURCES LLC d/b/a BUFFALO WILD
WINGS, INSPIRE BRANDS, INC.,
DONNA HIMES, in her individual capacity,
and JIMMY WRIGHT, in his individual capacity,

               Defendants.
------------------------------------------------------------------x

      Plaintiffs, NIKEKIA DESIUS ("Plaintiff Desius") and SADÉ HARRIS ("Plaintiff Harris"), through their counsel, SLATER SLATER SCHULMAN LLP, hereby submit this Complaint and complain of the Defendants, upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiffs complain pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), and the New York State Human Rights Law, and seek damages to redress the injuries Plaintiffs suffered as a result of being exposed to sexual discrimination, sexual harassment, hostile work environment, retaliation, and constructive discharge.

2. Jurisdiction of this action is conferred upon this Court as this action involves a federal question under Title VII of the Civil Rights Act. The Court also has supplemental jurisdiction over the State causes of action.

3. Venue is proper in this District based upon Defendants' place of business being subject to personal jurisdiction within Monroe County, State of New York, within the Western District of New York. 28 U.S.C. §1391(b).

4. On or around January 24, 2022, Plaintiff Desius filed a complaint with the EEOC against Defendant BWW RESOURCES LLC d/b/a BUFFALO WILD WINGS as set forth herein.

      On or about November 28, 2022, Plaintiff Desius received a Notice of Right to Sue from the EEOC.

5. On or around March 29, 2022, Plaintiff Harris filed a complaint with the EEOC against Defendant BWW RESOURCES LLC d/b/a BUFFALO WILD WINGS as set forth herein. On or about January 10, 2023, Plaintiff Harris received a Notice of Right to Sue from the EEOC.

6. Plaintiffs satisfied all administrative prerequisites and are filing this case within ninety (90) days of receiving their respective Notices of Right to Sue.

## PARTIES
### *Defendants*

7. Defendant BWW Resources, LLC d/b/a Buffalo Wild Wings ("BWW") was and is a duly authorized foreign corporation doing business in the State of New York. Upon information and belief, Defendant BWW solicits business within the State of New York and derives substantial revenues from goods used or consumed or services rendered in the State of New York. Defendant BWW is also an "employer" within the meaning of the New York Human Rights Law.

8. Defendant Inspire Brands, Inc. ("IB") was and is a duly authorized foreign corporation doing business in the State of New York. Upon information and belief, Defendant IB solicits business within the State of New York and derives substantial revenues from goods used or consumed or services rendered in the State of New York. Defendant IB is also an "employer" within the meaning of the New York Human Rights Law.

9. At all relevant times, Defendant Donna Himes ("Himes") was the General Manager at Defendant BWW's Greece, New York location. Defendant Himes supervised Plaintiffs and had hire and fire authority over Defendant BWW's personnel. At all times material, Defendant Himes had supervisory authority over Plaintiffs, controlled various aspects of Plaintiffs' employment, and reported to Defendant BWW, and Defendant IFB.

10. At all relevant times, Defendant Jimmy Wright ("Wright") was Shift Manager of the kitchen at BWW's Greece, New York location. Defendant Wright had supervisory authority over Plaintiffs, controlled various aspects of Plaintiffs' employment, and reported to Defendant Himes.

*Plaintiff Desius*

11. Plaintiff Desius is a single female who resides in Rochester, New York.
12. Plaintiff Desius is an "employee" within the meaning of the New York State Human Rights Law.
13. Defendants hired Plaintiff Desius in or around August 2021 as a server at Defendant BWW's Greece, New York location.

*Plaintiff Harris*

14. Plaintiff Harris is a single female who resides in North Chili, New York.
15. Plaintiff Harris is an "employee" within the meaning of the New York State Human Rights Law.
16. Defendants hired Harris in or around July 2021 as a cashier at Defendant BWW's Greece, New York location.

## FACTS
*Plaintiff Desius*

17. Upon hire in or around August of 2021, Defendants provided Plaintiff Desius with sexual harassment training and access to an online employee handbook.
18. Defendant Wright, the kitchen shift manager, began to sexually harass Plaintiff Desius by making sexual comments to and about her.
19. Defendant Wright would regularly make comments to Plaintiff Desius like:
    a. **"Let me eat your pussy."**
    b. **"You should come to my car and let me eat you up."**
    c. **"You're nice and chocolate--I'll eat you up like a sundae."**
20. Plaintiff Desius demanded Defendant Wright stop making sexual and offensive comments. However, the sexual harassment did not stop.
21. Defendant Wright also regularly sexually assaulted Plaintiff Desius by grinding his crotch against her buttocks.
22. Plaintiff Desius verbally complained to Defendant Himes about the sexual assault and sexual harassment of Defendant Wright shortly after it began.
23. Upon knowledge and belief, Defendant Himes knew Defendant Wright had previously been accused of such behaviors before.
24. As such, Defendants had knowledge of the sexual harassment.

25. Defendant Wright frequently drew sexually inappropriate images of his co-workers.

26. Defendant Wright started by making drawings of his co-workers' faces. He would then obtain their profile pictures from social media and draw their bodies with their faces, including sexually inappropriate details.

27. For example, Defendant Wright drew Plaintiff Desius and her co-worker Emily Slyck ("Slyck") with enlarged breasts and buttocks. He also drew Plaintiff Desius and Slyck laying on their backs with their legs open and bent over with their buttocks in the air. Defendant Wright would show his drawings to Plaintiff Harris, Plaintiff Desius, and Slyck. All women expressed disgust and asked him to stop drawing them.

28. In or around August 2021, Slyck complained to Defendant Himes about Wright's sexualized drawings of herself and others. However, no actions were taken.

29. Defendants continued to train Defendant Wright for a promoted position despite the complaints of sexual harassment against him.

30. On or around September 16, 2021, Defendant Wright stalked Plaintiff Desius by driving to her house and propositioning her for sex.

31. Defendant Wright stood in Plaintiff Desius' front yard and waited for her to leave her house. Defendant Wright then bombarded her with inappropriate sexual comments such as:
    a. **"Just let me eat your vagina."**
    b. **"I just want to taste it. I know it tastes like chocolate."**
    c. **"Are you ready yet? You ready? I'm not going home until late."**

32. Plaintiff Desius felt scared and anxious. She demanded Defendant Wright leave her property immediately and stop harassing her.

33. On or about September 18, 2021, two days after he came to her house, Defendant Wright walked up to Plaintiff Desius from behind and sexually assaulted her by grinding his groin against Plaintiff Desius' buttocks.

34. Plaintiff Desius immediately demanded Defendant Wright stop touching her.

35. Defendant Wright's sexual assault made Claimant feel unsafe, degraded, and violated.

36. Immediately afterwards Plaintiff Desius verbally complained to Defendant Himes about Defendant Wright's sexual assaults, stalking, and constant sexual harassment.

37. Defendants intimidated and retaliated against Plaintiffs rather than taking action to address Plaintiff Desius' complaint.

38. On or around September 18, 2021, Defendant Himes interviewed Plaintiff Desius, Plaintiff Harris, Slyck, and Sosa regarding Plaintiff Desius' complaints.

39. Rather than remedying the situation, Defendant Himes accused Plaintiff Harris and Sosa of lying about the sexual harassment.

40. On or around September 19, 2021, James Farrance ("Farrance"), Defendants' District Manager of Operations for Central and Western New York, visited Defendants' Greece, New York restaurant and attempted to intimidate Plaintiff Desius and Plaintiff Harris. by telling them they cannot retain a lawyer without notifying him.

41. Defendant Wright was not disciplined nor was he removed from the situation.

42. Rather than ending the discrimination and hostile work environment, Defendants retaliated against Plaintiff Desius.

43. In or around September 19, 2021, Defendants scheduled Plaintiff Desius and Defendant Wright to the same shift.

44. Plaintiff Desius again complained to Defendant Himes and indicated she felt uncomfortable being in the restaurant at the same time as Defendant Wright.

45. Defendant Himes responded by sending Plaintiff Desius home for the day and telling her, "We are going to have to figure it out." Defendant Himes said she would review the videos of the workplace.

46. Plaintiff Desius was off work for two to three days while Defendant Himes investigated. Defendant Himes then came back to Plaintiff Desius and told her there was nothing on the tapes and the investigation was closed.

47. After Plaintiff Desius' complaint, Defendants changed her schedule so that she would not be at work at the same time as Defendant Wright. Plaintiff Desius was forced to begin working morning shifts so that they would not be in the building at the same time. Further, to make certain that she would not overlap with Defendant Wright, Plaintiff Desius was the "first cut," the first employee who would be sent home. These changes resulting in lost wages due to less tips, as there were far fewer customers during the day shift and her shifts were much shorter than before.

48. In early October of 2021, Manager Caitlin McMahon started a group text chat that included Plaintiff Desius. In that group chat, numerous female employees complained about the behavior of Defendant Wright.

49. Defendants' retaliation against Plaintiff Desius created extreme amounts of emotional and financial burden.

50. As a result of Defendants' actions, Plaintiff Desius felt scared, humiliated, degraded, victimized, embarrassed and emotionally distressed.

51. Plaintiff Desius gave two weeks-notice that she was resigning from her position on or around October 19, 2021, as the lack of money she was making from her altered shifts did not compensate for her burden working as she was pregnant. As she was forced to resign, this resignation should be considered a constructive discharge. Regardless, her employment was terminated as Defendant Himes told her not to bother coming for the next two weeks.

52. As a result of the acts and conduct complained of herein, Plaintiff Desius suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other compensation which such employment entails. Plaintiff Desius also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

53. Plaintiff Desius further experienced severe emotional and physical distress.

54. Upon information and belief, the discrimination will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment.

55. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff Desius demands Punitive Damages against the Defendants.

56. Plaintiff Desius claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

57. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff Desius.

58. Defendants exhibited a pattern and practice of discrimination.

*Plaintiff Harris*

59. Upon hire Defendants provided Plaintiff Harris with sexual harassment training and access to an online employee handbook.
60. Plaintiff Harris began experiencing a hostile work environment due to sexual harassment in or around August 2021.
61. Defendant Wright regularly sexually harassed Plaintiff Harris during every shift they worked together.
62. Defendant Wright consistently made comments to Plaintiff Harris such as:
    a. "**Ride my face**"
    b. "**Come to my car and let me go down on you.**"
    c. '**I know you have a bigger butt than most girls here.**"
63. Plaintiff Harris felt scared and intimidated and either attempted to ignore Defendant Wright or told him to stop harassing her whenever he made these sexual and inappropriate comments.
64. Plaintiff Harris never observed Defendant Wright treat male staff in this manner.
65. Defendant Wright regularly sexually assaulted Plaintiff Harris in addition to harassing her verbally.
66. Defendant Wright would grab Plaintiff Harris' hips and upper buttocks and physically move her, rather than excusing himself or asking to pass by.
67. Whenever Defendant Wright touched Plaintiff Harris, she told him to stop touching her. However, Defendant Wright did not stop.
68. When Plaintiff Harris would bend over to pick up work materials, Defendant Wright would walk up behind Plaintiff Harris and sexually assault her by touching her waist and pulling her pants by the belt loops.
69. Plaintiff Harris would demand Defendant Wright stop touching her. However, Defendant Wright did not stop.
70. Defendant Wright regularly also would walk up to Plaintiff Harris from behind and sexually assault her by grinding his groin Plaintiff Harris' buttocks. This caused Plaintiff Harris to feel scared, humiliated, anxious, and emotionally distressed.

71. Plaintiff Harris complained to Defendant Wright each time he touched her. As such, Defendants had knowledge of the harassment. However, he did not stop and Defendants took no action to alleviate the treatment Plaintiff Harris was experiencing.

72. Defendant Wright also regularly sexually assaulted Plaintiff Harris by kissing her shoulders. Each time Defendant Wright kissed Plaintiff Harris, she told him to stop. However, Defendant Wright did not stop.

73. When Defendant Wright kissed Plaintiff Harris without consent, he would whisper comments into Plaintiff Harris' ear such as, "**You smell so good**."

74. Plaintiff Harris reacted with disgust and told Defendant Wright not to touch her. Defendant Wright did not stop.

75. On one occasion in or around August 2021, Defendant Wright asked Plaintiff Harris for photos of her face and for her phone number. Defendant Wright told Plaintiff Harris he wanted to draw photos of her too. Plaintiff Harris rejected Defendant Wright and felt scared and anxious.

76. Defendant Wright liked to show Plaintiff Harris the sexualized drawings he made of Plaintiff Harris' female coworkers. These drawing made Plaintiff Harris feel uncomfortable, anxious, and disgusted.

77. Plaintiff Harris understood that Emily Slyck had complained to Defendant Himes about the drawings Defendant Wright made, but nothing was done about the ongoing sexual harassment.

78. In or around September 2021, Defendant Wright sexually assaulted Plaintiff Harris by grabbing her buttocks and whispering sexually inappropriate comments to her. Plaintiff Harris responded loudly, "DO NOT TALK TO ME LIKE THAT AND DO NOT TOUCH ME."

79. However, Defendant Wright did not stop his sexual assaults. In fact, the next shift they were scheduled together, Defendant Wright grabbed Plaintiff Harris' buttocks and made sexual comments to her again.

80. Defendant Wright's constant sexual assault and harassment made Plaintiff Harris feel unsafe, degraded, and violated.

81. Plaintiff Harris knew Defendant Wright was sexually harassing her coworkers and Defendants failed to address it.

82. Plaintiff Harris knew that Defendant Wright had sexually assaulted and made sexual comments to Plaintiff Desius, Emily Slyck, and server Aaliyah Sosa.

83. Plaintiff Harris heard Defendant Wright tell Plaintiff Desius, Slyck, and Sosa:

    a. **"You should let me do what I want to you."**
    b. **"Come to my car and let me eat you up."**
    c. **"I bet you taste like chocolate"**
    d. **"You're nice and chocolate. I'll eat you up like a sundae."**

84. Plaintiff Desius, Slyck, and Sosa also told Plaintiff Harris about the sexually inappropriate comments Defendant Wright made.

85. Plaintiff Harris knew that Defendant Wright sexually assaulted her female coworkers, which contributed to the hostile work environment Plaintiff Harris experienced.

86. Plaintiff Harris knew that Defendant Wright sexually assaulted Plaintiff Desius by grinding his groin against her buttocks.

87. Plaintiff Harris knew that Defendant Wright had gone to Plaintiff Desius' home on or around September 16, 2021 and it caused her to feel scared and suffer emotional distress.

88. Plaintiff Harris felt scared knowing Defendants were aware of Defendant Wright's pattern of sexual assault, sexual harassment, discrimination, and hostility and failed to take any action to stop him. Furthermore, Defendants continued to train Defendant Wright for a promoted position despite multiple complaints of sexual harassment.

89. Plaintiff Harris made many complaints about Defendant Wright's ongoing sexual harassment, discrimination, unwanted touching, and hostility.

90. In or around September 2021, Plaintiff Harris verbally complained to Defendants' Manager Caitlin McMahon regarding Defendant Wright's inappropriate drawings, sexual comments, and unwanted comments.

91. In response to Plaintiff Harris' complaints, McMahon shared that she too felt uncomfortable by Defendant Wright and that Defendants are aware of Defendant Wright's pattern of sexual harassment. McMahon shared her confusion as to why Defendant Wright was promoted to a managerial position despite ongoing complaints.

92. On or around September 18, 2021, Plaintiff Desius complained to Defendant Himes about Defendant Wright sexually assaulting female employees by grinding his groin against them.

93. On or around September 18, 2021, Defendant Himes interviewed Plaintiff Harris about this complaint. During the interview, Defendant Himes accused Plaintiff Harris of lying about the sexual harassment. Defendant Himes discouraged Plaintiffs from discussing the sexual harassment any further. Plaintiff Harris was intimidated by the actions of Defendant Himes.

94. On or around September 19, 2021, James Farrance ("Farrance"), Defendants' District Manager of Operations for Central and Western New York, visited Defendants' Greece, New York restaurant and intimidated Plaintiff Desius and Plaintiff Harris. Farrance told Plaintiffs they cannot retain a lawyer without notifying him. Farrance told Plaintiff Harris he "heard lawyers are getting involved…if you get one, we will get one."

95. Plaintiff Harris knew Plaintiff Desius complained to Defendant Himes about being scheduled with Defendant Wright on or around September 19, 2021 and that she was sent home. Plaintiff Harris saw Plaintiff Desius' shifts be switched to the less lucrative mornings and dwindle in number in retaliation for the complaint, to the point Plaintiff Desius was scheduled so rarely she was forced to find another job due to constructive termination.

96. Defendants' hostile and retaliatory reaction to Plaintiff Desius' complaints created anxiety for Plaintiff Harris, as she felt intimidated, that her complaints would be ignored, and she would be retaliated against.

97. In early October of 2021, Manager Caitlin McMahon started a group text chat that included Plaintiff Desius. In that group chat, numerous female employees complained about the behavior of Defendant Wright.

98. In or around November 2021, Defendant Himes retaliated against Plaintiff Harris by reducing Plaintiff Harris' schedule from twenty-five hours per week to ten hours per week and from five days per week to two days per week.

99. Defendant Wright's employment was terminated in late October 2021. However, he would still come to the restaurant to eat and "hang out".

100. In November 2021, Plaintiff Harris again told Defendant Himes that she was unable to work on Thursdays and Sundays. Nonetheless, Defendant Himes scheduled her on Thursdays and Sundays and Plaintiff Harris was unable to work the shifts. Plaintiff Harris believes that she was scheduled for shifts she was unable to work as retaliation for her complaints.

101. Due to the menacing presence of Defendant Wright and the retaliatory schedule she was given, Plaintiff Harris was forced to resign from the restaurant, which is a constructive termination.

102. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

103. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

104. Plaintiff has further experienced severe emotional and physical distress.

105. Upon information and belief, the discrimination will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment.

106. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against the Defendants.

107. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

108. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

109. Defendants exhibited a pattern and practice of discrimination.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
*(Not Against Any Individual Defendant)*

110. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

111. Plaintiffs were employees within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

112. At all relevant times, Defendants BWW Resources LLC and Inspire Brands, Inc. employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

113. Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discharge an employee because of such employee's "gender/sex".

114. Plaintiffs' rights under Title VII were violated by acts of the Defendants.

115. The motivating factor for Plaintiffs' constructive discharge was Plaintiffs' gender/sex.

116. Defendant created and maintained a hostile work environment based on sex and sexual harassment.

117. But for Plaintiffs' complaints about sexual harassment, Plaintiffs would not have been constructively discharged.

118. Defendants' unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiffs' rights.

119. As a result of Defendants' unlawful acts, Plaintiffs suffered and continue to suffer damages, in forms including, but not limited to, lost income, lost future earnings and severe emotional distress, mental anguish, pain and suffering.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
*(Not against any Individual Defendants)*

120. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

121. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

122. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiffs with respect to the terms, conditions or privileges of employment because of their opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW
*(Against All Defendants)*

123. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

124. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

125. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding and abetting, inciting, compelling, and coercing the discriminatory conduct.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW
*(Against All Defendants)*

126. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

127. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

128. Defendants engaged in an unlawful discriminatory practice by constructively discharging Plaintiffs and subjecting them to further discrimination.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW
*(Not against any individual Defendants)*

129. Plaintiff repeats and reallege each and every allegation made in the above paragraphs of this complaint.

130. Executive Law § 296 provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar

or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

131. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiffs through gender/sex/sexual discrimination, hostile work environment based on sex, sexual harassment, and constructive discharge.

132. Plaintiffs hereby make a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## JURY DEMAND

Plaintiffs demand that the foregoing causes of action be tried before a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, demand judgment against Defendants in an amount to be determined at trial plus interest, including, but not limited to, all emotional distress, back pay and front pay, punitive damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: January 18, 2023
      Melville, NY 11747

                                            SLATER SLATER SCHULMAN LLP

                                            *John C. Luke, Jr.*
                                            John C. Luke, Jr.
                                            445 Broad Hollow Road, Suite 419
                                            Melville, NY 11747
                                            *Attorneys for Plaintiffs*

**DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.