UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NIKEKIA DESIUS and SADÉ HARRIS,

                           Plaintiffs,

                  v.

BWW RESOURCES LLC, et al.,

                         Defendants.
_____

<u>DECISION AND ORDER</u>

23-CV-6053DGL

       Plaintiffs Nikekia Desius and Sadé Harris filed the complaint in this action on January 19, 2023, against four defendants:  BWW Resources LLC d/b/a Buffalo Wild Wings and Inspire Brands, Inc. (collectively "the Company"), Donna Himes, and Jimmy Wright.  Plaintiffs assert claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and  the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("HRL"), arising out of events that allegedly occurred during plaintiffs' employment at a Buffalo Wild Wings restaurant ("restaurant") in Greece, New York.

       Defendants have moved for an order dismissing some of plaintiffs' claims.  First, defendants seek dismissal of all of Harris's claims, on the ground that they are untimely.  Second, they move to dismiss the third cause of action by both plaintiffs in its entirety, and the fourth cause of action as against Himes and Wright, on the ground that they fail to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**BACKGROUND**

Plaintiffs, both of whom are female, were hired to work at the restaurant in 2021:  Desius as a server, and Harris as a cashier.  Defendant Himes was the general manager of the restaurant, and defendant Wright was the shift manager of the kitchen.

The complaint alleges that while plaintiffs were working at the restaurant, Wright sexually harassed them on a regular basis.  His alleged behavior included making vulgar sexual comments and physical touching, such as grinding his crotch against plaintiffs and grabbing their buttocks.  Wright also allegedly had a penchant for drawing sexually explicit pictures of plaintiffs and other female employees, which he would show to them.

Plaintiffs allege that they repeatedly told Wright to stop such behavior, but he did not do so.  Plaintiffs and other female employees also complained about Wright to Himes, to no avail.

Plaintiffs allege that on or about September 18, 2021, Himes interviewed Desius, Harris, and two female coworkers concerning their complaints about Wright, but instead of disciplining Wright, Himes accused the employees of lying.  The next day, the Company's district manager James Farrance (who is not a party to this lawsuit) "attempted to intimidate" plaintiffs by telling them that they could not retain a lawyer without notifying him.  Complaint ¶ 40.

Plaintiffs also allege that after they complained to Himes, defendants began retaliating against them.  Desius's schedule was changed to avoid having her shifts coinciding with Wright's, but this resulted in her working fewer hours, at a less busy time of the day, causing her to lose income.  Desius resigned from her position in October 2021, primarily due to the insufficiency of her income.

Also in October, Wright's employment was terminated, but the complaint does not say why that happened, or if it had anything to do with the complaints about him from the female workers.  Plaintiffs allege that even after he was terminated, Wright would still come to the restaurant and "hang out," although the complaint does not allege whether his harassing behavior continued.  Complaint ¶ 99.

In November, Himes scheduled Harris to work on Thursdays and Sundays, even though Harris had told Himes that she was unavailable to work on those days.  Plaintiffs allege that Himes did so in retaliation for Harris's complaints about Wright.  Harris alleges that due to Wright's continued "menacing presence" and her "retaliatory schedule," she also resigned from her job.  Complaint ¶ 101.

Based on these allegations, plaintiffs assert five causes of action:  (1) a claim against the Company under Title VII, alleging that defendants created and maintained a hostile work environment at the restaurant, and that plaintiffs were constructively discharged on account of their sex; (2) a Title VII claim against the Company alleging that the Company retaliated against plaintiffs because of their complaints of sexual harassment; (3) a claim against all defendants under the HRL, alleging that they aided and abetted the discriminatory conduct toward plaintiffs; (4) an HRL claim against all defendants alleging retaliatory constructive discharge; and (5) an HRL claim against the Company alleging unlawful discrimination on account of plaintiffs' sex.  Plaintiffs seek damages in an unspecified amount.

**DISCUSSION**

**I.  Timeliness of Harris's Claims**

Defendants assert that Harris's claims should be dismissed in their entirety because Harris did not file the complaint within 90 days of her receipt of a right-to-sue letter ("RTS letter") from the Equal Employment Opportunity Commission ("EEOC").

"The law is well established that a plaintiff asserting claims under Title VII must do so within 90 days after receiving a right-to-sue letter from the EEOC." *Canady v. Union 1199/SEIU*, 527 F.Supp.3d 515, 516 (W.D.N.Y. 2021) (citing 42 U.S.C. § 2000e-5(f)(1)).  "The 90–day period is strictly enforced," *Hughes v. Elmira Coll.*, 584 F.Supp.2d 588, 589 (W.D.N.Y. 2008), and "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984).  "The ninety day time period is not a jurisdictional requirement," but "is in the nature of a statute of limitations which may be tolled in certain situations." *Richards v. North Shore Long Island*, No. __, 2011 WL 6102055, at *3 (E.D.N.Y. __ 2011) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)).

The complaint in this case states that Desius received her RTS letter on or about November 28, 2022, and that Harris received hers on or about January 10, 2023.  Complaint ¶¶ 4, 5.  The complaint was filed on January 19, 2023, well within the 90-day period for either letter.

Defendants contend, however, that the EEOC issued Harris's RTS letter on October 20, 2022, and that the ninety-day period commenced on that date.  In support of their motion, defendants have submitted a copy of Harris's RTS letter, dated October 20, 2022.  (Dkt. #8-3 at 2.)  Ninety days after that date was January 18, 2023.

Defendants have also submitted a copy of an email from plaintiffs' attorney John Luke to defendants' lawyer Jacqueline Phipps dated January 18, 2023 at 7:18 p.m., stating:

> I hope you are well.  Attached please find our complaint in the above mentioned matter. This is rather unorthodox but my credential is not working in the WDNY and I wanted to file this tonight. I intend on uploading the documents to ECF tomorrow just as soon as the court fixes the issue. Thank you.

(Dkt. #8-4 at 2.)  The complaint was electronically filed in this Court the next day, January 19.

In opposition to defendants' motion, Harris states in an affidavit that her attorneys received the RTSL on January 10, 2023, and that she did not receive one prior to that date.  (Dkt. #13-4 at 2.)  Plaintiffs' counsel likewise states that although his office requested an RTSL on October 8, 2022, his office did not receive an RTSL for Harris until January 10, 2023, in response to a request made on January 9.  (Dkt. #13-5 at 2.)  Plaintiffs have submitted a copy of an email from the EEOC to counsel's office dated January 9, 2023, stating, "According to our records, the Public Portal sent out a notification on 10/20/2022 and a reminder on 10/28/2022 to [plaintiff's attorney's email address].  I have attached the [RTSL] for your records."  (Dkt. #13-3 at 2.)  Plainly, then, the two sides sharply disagree about when Harris or her attorney first received the RTSL.

"It is well settled that a Court cannot consider documents outside the pleadings on a Rule 12(b)(6) motion to dismiss unless the documents are incorporated by reference in the complaint or are integral to the complaint."  *Allstate Ins. Co. v. Rozenberg*, 771 F.Supp.2d 254, 268 (E.D.N.Y. 2011).  The court may also take judicial notice of "documents filed with governmental entities and available on their official websites."  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 166 (S.D.N.Y. 2015).  That includes RTSLs.  *See, e.g.*,

*Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 862-63 (N.D. Ohio 2013) ("EEOC charges and related documents, including right to sue letters, are public records of which the Court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment").

Even considering the RTSL issued by the EEOC dated October 20, 2022, the Court cannot resolve this dispute on a Rule 12(b)(6) motion.  The RTSL indicates that it was issued on that date, but it does not conclusively show that it was received on or around that date, nor does it disprove the sworn statements by Harris and her attorney that neither of them received the RTSL until the following January 10.  *See Herdman v. L-J-L Trucking, Inc.*, No. 3:21-213, 2023 WL 2743395, at *2-*3 (W.D.Pa. Mar. 31, 2023) (stating that defendant's evidence that RTSL was issued on August 30 was insufficient to show that plaintiffs received it prior to September 13, as asserted by plaintiffs' counsel).

A district court in Texas recently denied a motion to dismiss under circumstances similar to those here.  In *Boshears v. Polaris Eng'g*, No. 22-cv-53, 2023 WL 2844930 (S.D.Tex. Mar. 27, 2023), the defendant submitted various EEOC documents that it contended demonstrated that plaintiff's counsel received a notice of right to sue on a certain date.  Denying the motion to dismiss, the court stated, "The problem is that these so-called 'facts' ... are certainly far from being 'not subject to reasonable dispute.'  In fact, Boshears strongly disputes that her counsel received notice of the EEOC Charge prior to November 22, 2021."  *Id.* at *3 (quoting Fed. R. Evid. 201(b)).  The court concluded that in light of that dispute, it would be "wholly inappropriate" for the court to decide the issue on a motion to dismiss.  *Id.*  The court added that the parties and the court could "revisit the limitations issue on summary judgment, after the

parties have had a full opportunity to conduct discovery and develop the summary judgment record." *Id. See also Orsaio v. N.Y.S. DOCCS*, No. 17-cv-685, 2017 WL 11269341, at *6 (N.D.N.Y. Nov. 2, 2017) (stating that "While the Court may consider the presumption [of mailing and receipt] and any rebuttal on summary judgment, that inquiry calls forth materials outside the pleadings that cannot be considered on a motion to dismiss," and denying motion to dismiss Title VII claims on timeliness grounds as premature).[1]

I likewise conclude that dismissal of Harris's claims as untimely would be inappropriate at this juncture. Defendants' motion is therefore denied. Whether the issues presented by the motion can be resolved after discovery and further development of the record, on a motion for summary judgment, remains to be seen, but at this point the motion is premature.

## II. Defendants' Motion to Dismiss the Third Cause of Action

The third cause of action alleges that defendants violated the aiding-and-abetting provision of the HRL, Exec. L. § 296(6), which makes is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." Complaint ¶ 125. Defendants contend that the allegations of the complaint do not support such a claim against any of the defendants, and that it must therefore be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] Although defendants do not appear to rely on Harris's receipt of a physical copy of the RTSL, but on her attorney's electronic receipt of the RTSL, I also note that it is unclear if or when Harris got a copy in the mail. The copy of the RTSL submitted by defendants (Dkt. #8-3) is dated 10/20/22, and is addressed to Harris at her street address, which suggests that a copy was sent to her by postal mail. There is a presumption that a notice issued by a government agency was mailed on the date shown on the notice, and that it was received three days later, *see Dubreus v. North Shore Univ. Hosp.*, No. 12 CV 940, 2012 WL 5879110, at *2 (E.D.N.Y. Nov. 20, 2012), but Harris denies receiving any copy at all, and at this point there is no proof that she did receive it.

As to the Company, defendants assert that there are no allegations that the Company actually participated in Wright's alleged harassment of plaintiffs, or that it shared a common purpose with Wright with respect to his harassment.  Defendants also contend that as to the Company, this claim is derivative of the separate claim against the Company for hostile work environment and constructive discharge.  *See* Complaint ¶ 131.

Plaintiffs' response to defendants' motion does not address these arguments, other than to state in a footnote that "Plaintiff is not bringing an aiding and abetting claim against the corporate Defendants."  (Dkt. #13 at 9 n. 2.)  The Court therefore deems Claim 3 to be withdrawn against the Company, and dismisses Claim 3 as to the Company.[2]

As to defendant Wright, the law is clear that an individual cannot aid and abet his own conduct.  *See Romano v. A360 Media, LLC*, 2023 WL 348453, at *12 (S.D.N.Y. Jan. 20, 2023) ("even if an underlying violation were present, courts ... have consistently held that an individual cannot aid and abet her own conduct"); *Boyce v. Weber*, No. 19-CV-3825, 2020 WL 5209526, at *2 (S.D.N.Y. Sept. 1, 2020) ("Put simply, it is oxymoronic to say that an individual defendant can aid and abet his own primary conduct"); *Bliss v. MXK Rest. Corp.*, 220 F.Supp.3d 419, 426 (S.D.N.Y. 2016) ("[A]n individual cannot aid or abet his or her own violation of the Human Rights Law") (quoting *Hardwick v. Auriemma*, 116 A.D.3d 465, 468 (1st Dep't 2014)).  Wright's alleged harassment is what gave rise to the hostile work environment; he could not have both created that environment and aided and abetted his doing so.

---

[2] Defendants' arguments concerning the Company are also well founded.  *See Sanchez v. L'Oreal USA, Inc.*, No. 21-CV-3229, 2022 WL 1556402, at *5-*7 (S.D.N.Y. May 17, 2022) (explaining that a corporate employer cannot be liable for aiding and abetting a hostile work environment violation by its employee), and cases cited therein.

Nor, on the facts pleaded, could Wright have aided and abetted Himes's alleged violations.  The only bases for the claims against Himes are that she failed to remedy the problem created by Wright's harassment, and that she retaliated against plaintiffs after they complained about Wright by reducing their hours and giving them undesirable shifts.  Wright's harassment of plaintiffs may have given rise to the problem that Wright allegedly failed to correct, but it could not logically have aided and abetted Wright's subsequent actions or failures to act.  *See Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 287 (2d Cir. 2007) (to be liable under aiding-and-abetting theory, defendant must "knowingly and substantially assist" the primary tortfeasor) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir. 1983)) (Hall, C.J., concurring).  There is thus no basis for an aiding-and-abetting claim against Wright.

With respect to Himes, Exec. L. § 296(6) makes it an "unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article ... ."  Liability under this subsection therefore requires an underlying predicate violation of the HRL.  *See Alvarado v. United Hospice, Inc.*, No. 20-CV-10790, 2022 WL 4485379, at *21–22 (S.D.N.Y. Sept. 27, 2022) ("in order for a defendant to be liable as an aider and abettor under § 296(6) of the NYSHRL, a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal").

The only possible predicate violations here would be (1) Wright's harassment of plaintiffs, giving rise to a hostile work environment, and (2) the alleged constructive discharge of plaintiffs, which resulted principally from Himes's reducing plaintiffs' work hours and assigning them to less lucrative shifts.  As to the latter, Himes could not be liable as an aider and abettor,

since she was the one who scheduled plaintiffs' work hours.  She could not have aided and abetted herself in doing so.

With respect to Wright's alleged harassment, there is authority that coworkers and supervisors can be liable under § 296(6) if they "actually participate[d] in the conduct giving rise to a discrimination claim."  *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004).  Courts have also held that a supervisor's "failure to take adequate remedial measures in response to a complaint of discrimination can, with proper factual allegations, constitute actual participation."  *Parra v. City of White Plains*, 48 F.Supp.3d 542, 555 (S.D.N.Y. 2014).

At the same time, however, simply "[f]ailing to respond to others' violations of the NYSHRL does not, without more, support aiding and abetting liability."  *Warren v. Ultimate Fitness Group, LLC*, No. 19-CV-10315, 2021 WL 4239246, at *5 (S.D.N.Y. Sept. 17, 2021)).  *See also Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ 2512, 2022 WL 524551, at *14 (S.D.N.Y. Feb. 22, 2022) (a supervisor's "failure to take remedial measures [in response to a complaint of discrimination] does not in and of itself establish aiding and abetting liability").  Rather, to be liable under an aiding-and-abetting theory, "the aider and abettor must "share the intent or purpose of the principal actor," and there must be a "community of purpose" between them.  *Tromblee v. N.Y.S. Office for People with Dev. Disabilities*, No. 19-cv-638, 2023 WL 2655471, at *15 (N.D.N.Y. Mar. 27, 2023) (quoting *Dodd v. City Univ. of N.Y.*, 489 F.Supp.3d 219, 268 (S.D.N.Y. 2020)).

In the case at bar, plaintiffs have alleged that when they complained to Himes about Wright's behavior, she did not believe them.  She did, however, change Desius's schedule to avoid having Desius and Wright work at the same time.  While Desius alleges that this resulted

-10-

in her making less money because she was working at slower times of the day, it could hardly be said to have aided and abetted Wright's harassment of Desius.

As to Harris, by the time she left in November 2021, Wright had been terminated and was no longer working at the restaurant.  Apparently he would still come in as a customer, but there are no allegations that, aside from his "menacing presence," he continued to harass Harris. According to the complaint, Harris, like Desius before her, resigned principally because she was unhappy with her work hours.

These allegations do not show that Himes actively participated in Wright's harassment or that she shared in his intent to subject plaintiffs to discrimination or harassment.  At most, plaintiffs have alleged only that Himes did not take action against Wright, but in itself, that is not enough to render her liable as an aider and abettor.  *See Mondelo*, 2022 WL 524551, at *14 (finding no basis for aiding-and-abetting claim against managing partner at law firm where plaintiff worked, since plaintiff "has not pleaded any facts from which a trier of fact could infer that [partner] failed to intervene [to put a stop to discriminatory behavior of plaintiff's supervisor] because he too harbored an intent to discriminate against Mr. Mondelo because he was Hispanic"); *Beattie v. Farnsworth Middle Sch.*, 143 F.Supp.2d 220, 230 (N.D.N.Y. 1998) ("Mere ineptitude and insensitivity in response to a complaint of harassment standing along is insufficient to support a finding of personal liability" necessary to state a claim for aiding and abetting).  The third cause of action is therefore dismissed in its entirety.

### III.  Defendants' Motion to Dismiss the Fourth Cause of Action

The fourth cause of action is brought against all defendants under Exec. L. § 296(7), which makes it " an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article ... ."  Plaintiffs allege that they did so "by constructively discharging plaintiffs and subjecting them to further discrimination," Complaint ¶ 128.  The complaint does not explain what is meant by "further discrimination."

Defendants move to dismiss this claim insofar as it is asserted against the individual defendants, Himes and Wright, based on the decision of the New York Court of Appeals in *Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 458 (2021), in which the New York Court of Appeals ruled that the HRL "does not render employees liable as individual employers."

Plaintiff's response to defendants' motion does not address this issue, and the Court therefore considers this claim to be abandoned as to the individual defendants.  In addition, I agree with defendants that the *Doe* decision precludes this claim as to the individual defendants. The fourth cause of action is therefore dismissed as to Himes and Wright.

**CONCLUSION**

Defendants' motion for partial dismissal of the complaint (Dkt. #8) is granted in part and denied in part.  Plaintiffs' third cause of action is dismissed in its entirety.  Plaintiffs' fourth cause of action is dismissed as to defendants Donna Himes and Jimmy Wright.  In all other respects, the motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        June 1, 2023.

-13-